Filed 6/25/14  P. v. Barajas CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048764 |
| v. | (Super. Ct. No. 12CF0897) |
| EXZAY ALEXANDER BARAJAS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard F. Toohey.  Affirmed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Exzay Alexander Barajas of felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1); all statutory references are to the Penal Code unless noted), carrying a loaded, stolen firearm in public (§ 25850, subds. (a), (c)(2)), felony evading arrest (Veh. Code § 2800.2), and misdemeanor resisting or obstructing an officer in the lawful performance of duties (§ 148, subd. (a)(1)).  The jury found Barajas committed the weapons offenses to benefit a criminal street gang. (§ 186.22, subd. (b)(1).)  Barajas challenges the sufficiency of the evidence to support the gang enhancement.  We conclude ample evidence supports the jury's verdict and therefore affirm the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

On March 26, 2012, shortly before 11:00 p.m., Barajas, a member of the Darkside gang, was driving a white Lexus on Sullivan Street in an area claimed by the Sullivan Street gang.  His passenger, Maria Garibay, had no previously known ties to Darkside.

Santa Ana Police Officer Antonio Graham activated his overhead lights and attempted to stop Barajas for a traffic violation.  Barajas accelerated and continued driving.  Graham radioed for backup and followed Barajas into the driveway of a densely populated apartment complex.  Barajas drove through the complex, reaching speeds of 30 miles per hour, until he opened the door and jumped out of the moving vehicle.  The Lexus ran over a curb and crashed into playground equipment.

Graham chased Barajas on foot, repeatedly yelling, "Stop. Police."  Barajas held his waistband as he ran.  Ultimately, Barajas raised his hands above his head and said, "Don't shoot me. I have a gun."  Graham arrested Barajas and found a stolen,

2

loaded .357-caliber revolver tucked in Barajas's waistband. Barajas sported a large tattoo of "Darkside" on the back of his shaved head.

Garden Grove Detective George Kaiser testified as an expert on criminal street gangs. Kaiser noted Barajas was driving in a "multi-gang contested area" on Sullivan Street north of McFadden, and at least three gangs claimed this geographical area: Darkside, Sullivan Street, and Goldenwest Street. Sullivan and Darkside may have had an existing rivalry when Graham arrested Barajas, although Kaiser previously had believed Sullivan and Darkside were allies. Kaiser explained why he believed Barajas was a member and active participant in the Darkside gang. Barajas's history with the gang included being the victim of a "gang shooting/hit-up" in 2006. In December 2007, Santa Ana police officers found Barajas in possession of a sawed-off shotgun hidden under his shirt. He was with another Darkside gang member and both said they had the shotgun "for protection from rival gangs.'' In December 2010, Barajas was convicted of conspiracy to commit an assault by means of force likely to produce great bodily injury, and he admitted committing the crime to benefit Darkside.

Kaiser testified Darkside's primary activities include robbery, sales of controlled substances, vehicle theft, and weapons possession, including possession by felons. Kaiser also explained the prominence of guns within the gang culture. A "gang gun" is like a library book; a gang member obtains permission to check it out and remains responsible until he returns it. Weapons project power, and while gang members can engage in physical violence without weapons, "it benefits them and their gang to be armed whether it be with a firearm, knife, a screwdriver, box cutter, doesn't matter what the weapon is, gives them more power, gives the gang more power."

3

Responding to a hypothetical question paralleling the facts of the current case, Kaiser opined a gang member armed with a loaded firearm in a contested gang area at night benefitted his gang. A visible tattoo identifying the gang benefitted the gang in any confrontation by enhancing its reputation as armed, powerful, and unafraid to use violence to promote its reputation. Kaiser also opined that Barajas's conduct of running away from the pursuing officer was motivated by a desire for self-preservation and to avoid capture while possessing a firearm.

Following a trial in May 2013, the jury convicted Barajas as noted above. In July 2013, the court sentenced Barajas to 15 years and four months in prison, including a three-year gang enhancement.

II

DISCUSSION

Barajas contends there is insufficient evidence to sustain the gang enhancement associated with the firearm offenses. We disagree.

Section 186.22, subdivision (b), imposes additional punishment if the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." The court instructed the jury that the prosecution must prove Barajas "committed the crime for the benefit of, at the direction of, or in association with a criminal street gang," and he "intended to assist, further, or promote criminal conduct by gang members." (CALCRIM No. 1401.) We review the whole record in the light most favorable to the judgment to determine whether it contains "substantial" evidence – i.e., evidence which is credible and of solid value – from which a rational trier of fact

4

could have found the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320.)

Barajas concedes he belongs to a criminal street gang and unlawfully possessed a loaded, stolen firearm in an area contested by rival gangs. But he argues there is no "factual basis to support the jury's finding that [his] firearm possession was gang related other than [his] gang membership," and attacks Detective Kaiser's opinion "mere possession" of the firearm benefitted the gang as "based on nothing more than speculation about what might happen or could have happened." He asserts there was no evidence the gun was a borrowed "gang gun," and notes his female passenger had no known ties to the gang. He also emphasizes he did not use gang hand signals or gang slogans, and did not use his concealed gun to intimidate anyone. He concludes the evidence is insufficient even if the evidence demonstrates he possessed the firearm to protect himself from a gang assault.

A.	*Substantial Evidence Supports the Jury's Conclusion Barajas Possessed the Stolen Firearm for the Benefit of His Gang*

Barajas argues the present case is similar to *In re Frank S.* (2006) 141 Cal.App.4th 1192 (*Frank S.*), where the court reversed for lack of substantial evidence that the minor possessed a concealed weapon for the benefit of a gang. In *Frank S.*, an officer detained the minor for failing to stop his bicycle at a red light. The minor was carrying a knife, a small bindle of methamphetamine, and a red bandana. The minor claimed he carried the knife for protection against a local gang, and later admitted he was affiliated with a rival gang. The prosecution's expert testified that carrying the knife benefited the minor's gang by providing them protection if confronted by a rival gang. (*Id.* at pp. 1195-96.) The only evidence that the minor had any reason to expect to

5

use the knife in a gang-related offense was his statement to the arresting officer that he had been jumped two days prior and needed the knife for protection. (*Id.* at p. 1199.) The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense. (*Ibid.*) The appellate court emphasized the evidence showed no more than the minor's affiliation with a gang, and membership alone does not establish the requisite specific intent. (*Ibid.*) The court therefore determined insufficient evidence supported the gang enhancement, explaining "nothing besides weak inferences and hypotheticals show the minor had a gang-related purpose for the knife." (*Ibid.*)

*Frank S.* is readily distinguishable. Unlike the expert in *Frank S.*, Kaiser's extensive experience investigating gangs, including Barajas's gang, provided the basis to explain how gangs use guns to further their criminal objectives. The primary activities of Barajas's gang included the possession of weapons, which facilitated his gang's other crimes, such as robbery, drug sales, and vehicle thefts. Barajas's active participation in his gang stands in contrast to the minor's gang's affiliate status in *Frank S.*, and therefore strengthens the inference Barajas held the firearm with the specific intent to promote, further, or assist the criminal conduct of gang members. In *Frank S.* there was no evidence the minor was in gang territory, but here Barajas drove through contested gang territory with a loaded firearm, and at least one of those gangs posed a threat to Barajas and his gang. In contrast to the expert's testimony in *Frank S.*, the gang expert here testified a rival gang confrontation could occur in this area at any time, which explains why Barajas would arm himself to commit a gang-related offense. In sum, the evidence here provides more than mere speculation or weak inferences.

6

Barajas also relies upon *People v. Ramon*, where the court refused to uphold a gang enhancement based on speculative expert testimony. (*People v. Ramon* (2009) 175 Cal.App 4th 843 (*Ramon*).) In *Ramon*, a deputy sheriff stopped the defendant and his passenger, both members of the same gang, while driving a stolen car through territory the gang claimed. Neither defendant made any gang sign or attempted to gain possession of the gun under the driver's seat. (*Id.* at p. 847.) According to the *Ramon* court, the prosecution's gang expert surmised the defendant acted with the requisite intent for the gang enhancement based only on his gang membership while travelling in an area claimed by his gang. (*Id.* at p. 849.) The appellate court overturned the true finding on the enhancement because "[t]here were no facts from which the expert could discern whether [the defendant and his passenger] were acting on their own behalf the night they were arrested or were acting on behalf of [their gang]." (*Id.* at p. 851.)

Barajas's reliance on *Ramon* is unavailing. The expert in *Ramon* relied primarily on the fact the defendant and his passenger belonged to the same gang and drove a stolen car through territory claimed by their gang. From this the expert surmised the gun and stolen vehicle "could be used" to commit the gang's primary crimes. (*People v. Ramon, supra,* 175 Cal.App 4th at p. 849.) The possibility the defendant could have intended to promote a crime by gang members led the expert to speculate that the defendant did in fact specifically intend to promote, further, or assist criminal conduct by gang members. No factual basis supported the expert's opinion, in large part because the primary crimes of the defendant's gang did not include receiving stolen property or firearm possession, the two crimes charged against the defendant.

In contrast to *Ramon*, Barajas traveled through potentially hostile gang territory, and the expert testified illegal gun possession was a primary activity of

Barajas's gang. The jury therefore reasonably could conclude Barajas, as an active participant in his gang, possessed the loaded revolver with the specific intent to promote or further the criminal conduct of gang members. Barajas's flight from the pursuing officer further supports the jury's conclusion he possessed the gun to promote his gang.

Relying on *People v. Albarran* (2007) 149 Cal.App.4th 214 (*Albarran*), Barajas further argues that only his gang affiliation supported the gang enhancement and this does not constitute substantial evidence. In *Albarran*, the defendant and a fellow gang member fired gunshots at a house where a birthday party was taking place. To prove the crime was gang related, the prosecutor argued the motive for the shooting was to gain respect and enhance the shooters' reputations within their gang. The prosecutor acknowledged he had no evidence to prove the crime was gang related or motivated except for the testimony of a gang expert. (*Id.* at p. 219.) The expert conceded, however, (1) there was no direct evidence to link the shooting to defendant's gang and (2) the house owner's gang had no known or relevant gang rivalries. (*Id.* at p. 227.) The appellate court concluded there was nothing inherent in the facts of the shooting to suggest any specific gang motive and the only evidence to support the respect motive was the defendant's gang affiliation, which by itself was insufficient. (*Ibid.*)

In contrast to the expert's testimony in *Albarran*, Kaiser's testimony that Barajas armed himself in case a rival gang member confronted him is supported by evidence of Barajas's decision to drive through contested gang territory. Kaiser extensively described gang subculture, explaining "there's a high probability that [Barajas] may encounter a rival or be hit up whether it be by a rival or any other gang. So he has the loaded firearm for immediate use. He can immediately respond to a hit up or any challenge by a rival." Thus, Kaiser opined possession of a loaded firearm

8

benefitted the gang because using it in a shooting would increase the gang's reputation as armed, powerful, and unafraid to use violence.

Unlike *Frank S.*, *Ramon*, and *Albarran*, and in light of Barajas's prior possession of a sawed-off shotgun admittedly "for protection from rival gangs," the jury reasonably could infer Barajas possessed the stolen firearm for the gang-related purpose of using it against a rival gang member in a possible confrontation as he drove through the "multi-gang contested area."

B.        *Substantial Evidence Supports the Jury's Conclusion Barajas Specifically Intended to Promote, Further, or Assist Criminal Gang Activity*

Barajas challenges the evidence to establish he had the specific intent to promote, further, or assist criminal activity by gang members because he acted alone and no evidence showed he used a "gang gun" or identified himself as a gang member. True, Barajas was not with other gang members, but that does not lead to the conclusion he could not promote, further, or assist criminal activity by gang members, including his own criminal designs. (See *People v. Albillar* (2010) 51 Cal.4th 47, 66 [no requirement the criminal conduct be separate from the defendant's offense].) As discussed above, there was ample evidence from which the jury reasonably could infer Barajas's gun possession was gang related, including his decision to drive into hostile gang territory with a loaded weapon. The jury heard Kaiser's expert opinion that Barajas's actions promoted and furthered the criminal conduct of gang members because Barajas was armed with a loaded firearm, actively fled, and had visible tattoos. Furthermore, the firearm was loaded and concealed on his person, which meant he could use it immediately to assault rivals. Kaiser opined that these actions would further Darkside's reputation both within the criminal and civilian community. Kaiser also explained the

9

perverse respect a gang member gains by carrying a firearm, and how this projects the gang's power. As Kaiser explained, it "doesn't matter what the weapon is, gives them more power, gives the gang more power." The jury therefore reasonably could conclude Barajas acted to promote or further gang criminal activity by increasing the gang's respect in the community.

In sum, substantial evidence supported the jury's conclusion Barajas acted with the specific intent to promote or further the conduct of other gang members. Barajas was carrying a loaded firearm, fled from the police, and had visible tattoos identifying himself as a Darkside member. Barajas drew attention to himself as a Darkside member carrying a loaded gun, which enhanced the gang's reputation for violence in the community, garnered respect within the gang culture, and assisted criminal activity by other gang members.

III

DISPOSITION

The judgment is affirmed.


ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

10